**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **DATASPHERE, LLC,** | |
| *Plaintiff,* | Civil Action No. 2:26-cv-00075-JRG |
| v. | **JURY TRIAL DEMANDED** |
| **EQUINIX, INC.,** | |
| *Defendant.* | |

**DEFENDANT EQUINIX, INC.'S MOTION TO DISMISS
<u>PLAINTIFF DATASPHERE, LLC'S COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION.................................................................................................... 1

II.   STATEMENT OF THE ISSUES ............................................................................ 2

III.   FACTUAL BACKGROUND ................................................................................. 2

IV.   LEGAL STANDARD............................................................................................. 5

V.   ARGUMENT .......................................................................................................... 5

A.   DataSphere Fails to Plausibly Allege Facts Sufficient to Establish Divided
Infringement.................................................................................................................... 5

   1.   DataSphere fails to allege that any single entity performs, or directs or controls the
   performance of, all asserted claim steps required for divided infringement under the '778
   patent.................................................................................................................................. 7

   2.   DataSphere fails to allege that any single entity performs, or directs or controls the
   performance of, all asserted claim steps required for divided infringement under the '172
   patent.................................................................................................................................. 9

   3.   DataSphere fails to allege that any single entity performs, or directs or controls the
   performance of, all asserted claim steps required for divided infringement under the '239
   patent.................................................................................................................................. 12

   4.   DataSphere fails to allege that Equinix controls the claimed system as a whole or puts
   into service all portions of the claimed invention for divided infringement under the '381
   patent.................................................................................................................................. 14

B.   DataSphere Fails to Plead Facts Sufficient to Establish Direct Infringement .............. 17

   1.   DataSphere fails to allege that the Accused Instrumentalities satisfy each and every
   element of the Asserted Claims......................................................................................... 17

   2.   DataSphere impermissibly mixes and matches disparate products and third-party
   components across claim elements. ................................................................................... 21

   3.   DataSphere's doctrine-of-equivalents allegations are conclusory and fail for the same
   reasons as its literal-infringement claims.......................................................................... 25

C.   DataSphere's Likely Request for Leave to Amend Should Be Denied as Futile ........... 26

VI.   CONCLUSION .................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)...............................................................6, 9, 13, 14

*Alexsam, Inc. v. Barnes & Noble, Inc.*,
No. 2:13-CV-3-MHS-CMC, 2014 WL 12615846 (E.D. Tex. May 12, 2014)
.........................................................................................................................6, 11, 14, 15

*Aquatex Indus., Inc. v. Techniche Sols.*,
479 F.3d 1320 (Fed. Cir. 2007)..............................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................5

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)...............................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................5

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................17

*Cap Co. v. McAfee, Inc.*,
No. 14-CV-05068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015)..............21, 22

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*,
631 F.3d 1279 (Fed. Cir. 2011).................................................................14, 16, 22

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .............18

*CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*,
No. 2:23-CV-00311-JRG, 2024 WL 1219725, at *4 (E.D. Tex. Mar. 20, 2024)...................21

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)..........................................................................17, 18

*United States ex rel. Doe v. Dow Chem. Co.*,
343 F.3d 325 (5th Cir. 2003) ................................................................................26

*Earin AB v. Skull Candy, Inc.*,
No. 1:25-cv-00712-RGA-SRF (D. Del. June 6, 2025) .........................................27

*ESW Holdings, Inc. v. Roku, Inc.*,
   No. 6:19-CV-00044-ADA, 2021 WL 1069047 (W.D. Tex. Mar. 18, 2021) ........................... 16

*Gentilello v. Rege*,
   627 F.3d 540 (5th Cir. 2010) ................................................................................................ 26

*Geovector Corp. v. Samsung Elecs. Co.*,
   No. 16-CV-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017) ..................................... 22

*Goldstein v. MCI WorldCom*,
   340 F.3d 238 (5th Cir. 2003) ................................................................................................ 26

*IBM v. Booking Holdings, Inc.*,
   775 F. App'x 674 (Fed. Cir. 2019) .......................................................................................... 5

*Info. Images, LLC v. PGA Tour, Inc.*,
   686 F. Supp. 3d 549 (W.D. Tex. 2023) ............................................................................. 14, 16

*Kovalchuk v. Wilmington Sav. Fund Soc'y*,
   No. 21-40281, 2021 WL 5119705 (5th Cir. Nov. 3, 2021) ..................................................... 26

*LifeNet Health v. LifeCell Corp.*,
   837 F.3d 1316 (Fed. Cir. 2016) .............................................................................................. 17

*Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*,
   No. 6:19-CV-00059-RWS, 2020 WL 6803249 (E.D. Tex. Jan. 14, 2020) .......................... 6, 10

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016) .............................................................................................. 11

*Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) ................................................................................................ 26

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
   No. 2:24-CV-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024) ..................... 6, 9, 14

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*,
   648 F.3d 258 (5th Cir. 2011) ................................................................................................ 12

*Orion IP, LLC v. Home Depot USA, Inc.*,
   No. 2:05-CV-306, 2005 WL 8161153 (E.D. Tex. Oct. 7, 2005) ............................................ 28

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
   215 F.3d 1246 (Fed. Cir. 2000) .............................................................................................. 22

*Semcon IP Inc. v. Kyocera Corp.*,
   No. 2:18-CV-00197-JRG, 2019 WL 1979930 (E.D. Tex. May 3, 2019) ................................. 17

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) .........................21

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)......................................................................................22

*TecSec, Inc. v. Int'l Bus. Machs. Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013)......................................................................................22

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)........................................................................................................25

*ZitoVault, LLC v. Int'l Bus. Machs. Corp.*,
    No. 3:16-CV-0962-M, 2018 WL 2971179 (N.D. Tex. Mar. 29, 2018)...................................22

**Statutes**

35 U.S.C. § 271(a) ..................................................................................................17, 22

**Other Authorities**

Fed. R. Civ. P. 12(c) ...................................................................................................26

I.      INTRODUCTION

Defendant Equinix, Inc. ("Equinix") moves to dismiss Plaintiff DataSphere, LLC's ("DataSphere") Complaint (Dkt. No. 1) with prejudice for failure to set forth plausible allegations of direct infringement pursuant to Federal Rule of Civil Procedure 12(b)(6).

DataSphere's Complaint alleges that Equinix directly infringes four patents: U.S. Patent Nos. 7,640,381 (the "'381 patent"), 7,782,778 (the "'778 patent"), 7,203,172 (the "'172 patent"), and 7,529,239 (the "'239 patent") (collectively, "Asserted Patents"). The Complaint and accompanying claim charts accuse a combination of Equinix and third-party products, presenting a claim of divided infringement. But they fail to plausibly allege that (1) Equinix directs or controls the performance of the accused third-party products or systems for the asserted method claims of the '778, '172, and '239 patents; and (2) Equinix controls or puts into service the accused functionality as a whole for the system claim of the '381 patent. DataSphere thus fails to plausibly allege facts sufficient to establish divided infringement.

Even setting that aside, DataSphere's infringement allegations still fail because they fail to allege that the accused products satisfy each and every limitation of the asserted patents. First, several claim limitations are left entirely unaddressed in DataSphere's charts. Second, DataSphere's attempts to stitch together an infringement read by mixing and matching disparate Equinix offerings with third-party products should be rejected. Third, the critical deficiencies in DataSphere's infringement allegations cannot be cured by conclusory doctrine-of-equivalents allegations. Put simply, DataSphere fails to state a claim for direct infringement by Equinix.

These fundamental deficiencies are unsurprising in view of DataSphere's apparent lack of attention to detail (and the absence of coherent pleading tied to Equinix's products) reflected throughout its Complaint. For example, each count in the Complaint accuses Skullcandy, Inc., a non-party to this litigation, of infringement. Dkt. No. 1 ¶¶ 45, 52, 59, 66. DataSphere also alleges

1

that *Equinix* is entitled to damages, as a result of its own or Skullcandy's alleged infringement. *Id.* ¶¶ 46, 53, 60, 67. The deficiencies in DataSphere's Complaint and infringement charts, coupled with these blatant errors, are reason enough to dismiss the Complaint in its entirety with prejudice.

## II.      STATEMENT OF THE ISSUES

1.      Whether DataSphere's failure to allege facts establishing that Equinix directs or controls the performance of all steps of the claimed methods by third parties warrants dismissal of its divided-infringement theories for the '172, '778, and '239 patents.

2.      Whether DataSphere's failure to allege facts establishing that Equinix controls the accused system as a whole and puts it into service warrants dismissal of its divided-infringement theory for the '381 patent.

3.      Whether DataSphere's failure to plausibly allege infringement of several claim limitations warrants dismissal of its direct-infringement claims.

4.      Whether DataSphere's impermissible mixing and matching of disparate Equinix offerings and third-party components across all claim elements warrants dismissal of its direct-infringement allegations.

5.      Whether DataSphere's conclusory and boilerplate doctrine-of-equivalents allegations warrant dismissal when they are indistinguishable from its literal-infringement theories.

6.      Whether leave to amend should be denied as futile where the deficiencies in DataSphere's infringement claims are incurable.

## III.     FACTUAL BACKGROUND

On January 28, 2026, DataSphere filed this action against Equinix in the Eastern District of Texas, alleging infringement of the '381, '778, '172, and '239 patents.

2

The '381 patent is directed to an apparatus for caching and transferring data between a storage system and a plurality of clients, including a storage interface, a host interface, a cache with per-client buffers, and circuitry for identifying data-transfer rates. Dkt. No. 1 ¶¶ 39–46. DataSphere asserts claim 25, an apparatus claim, and maps its elements to a combination of what is described as Equinix Data Centers, Equinix Network Edge Hitachi VSP storage systems (the VSP E790 and VSP 5200), Hitachi Cloud Connect for Equinix, and the Brocade 6510 Fibre Channel switch manufactured by Broadcom. Dkt. No. 1-5 at 1–2. However, Equinix's role is limited to owning colocation data center space in which third-party hardware is deployed. The claim chart relies exclusively on Hitachi Vantara and Broadcom documentation to describe the accused functionality. *See generally id*.

The '778 patent is directed to a method for controlling data flow in an optical transport system, including determining memory availability in an egress terminal and allowing transmission only when memory is available. Dkt. No. 1 ¶¶ 47–53. DataSphere asserts claim 25, a method claim, and maps its elements to Equinix IBX[1] Data Centers as physical housing, Hitachi Cloud Connect for Equinix for storage, and the Brocade 6510 switch for flow control functionality. Dkt. No. 1-6 at 1–12. Every element of the claimed flow control method is attributed to the Brocade 6510 switch and supported exclusively by Broadcom technical documents. *See generally id*.

The '172 patent is directed to a method for routing calls in a hybrid, packet-based, and circuit-switched network using softswitch, and routing the call. Dkt. No. 1 ¶¶ 54–60. DataSphere asserts claim 1, a method claim, and maps its elements to a combination of Equinix Data Centers, Equinix Network Edge, Twilio Interconnect, and Telnyx Telephony Engine. Dkt. No. 1-7 at 1–12. The claimed call-processing steps, determining the destination, identifying the nearest softswitch,

---

[1] "IBX" is a marketing acronym used by Equinix to describe its data centers as "International Business Exchanges." *See* Dkt. No. 1-5 at 5.

and routing the call, are attributed entirely to Twilio and Telnyx, independent third-party VoIP service providers that merely deploy their services in Equinix's colocation facilities. *See generally id*.

The '239 patent is directed to a method for dynamically routing data packets in a network by determining a next-hop address in a source edge device and generating a transmission packet address to a target edge device. Dkt. No. 1 ¶¶ 61–67. DataSphere asserts claim 1, a method claim, and maps its elements to Equinix's Network Edge platform. Dkt. No. 1-8 at 1–23. However, the critically claimed steps, including determining next-hop addresses and generating transmission packets, are attributed to third-party virtual network functions ("VNFs") that customers independently deploy and operate on Equinix's infrastructure. *See generally id*.

As illustrated in the table below, DataSphere's infringement theories depend on Equinix products, systems, and functionality—in several cases, merely the space that Equinix rents to colocation customers as "Data Centers"—as well as third-party products, systems, and functionalities that can be deployed by third parties within or alongside Equinix's data-center infrastructure.

| Asserted Patent | Accused Equinix Products/ Functionality | Accused Third-Party (Non-Equinix) Products/Functionality |
|---|---|---|
| '381 Patent | Equinix Data Centers; Equinix Network Edge | Hitachi VSP E790 and VSP 5200 storage systems; Hitachi Cloud Connect for Equinix; Brocade 6510 Fibre Channel switch (Broadcom) |
| '778 Patent | Equinix Data Centers | Hitachi Cloud Connect for Equinix (storage); Brocade 6510 switch (all flow control functionality) (Broadcom) |
| '172 Patent | Equinix Data Centers; Equinix Network Edge | Twilio Interconnect (call processing and routing); Telnyx Telephony Engine (call processing and routing) |

| '239 Patent | Equinix Network Edge | Third-party virtual network functions ("VNFs") deployed and operated by customers (next-hop address determination; transmission packet generation) |
|---|---|---|

## IV.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility occurs when the plaintiff pleads facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a court must accept all factual allegations as true, legal conclusions are not entitled to the assumption of truth. *Id.* Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth. *Id.*; *see also Twombly*, 550 U.S. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do.").

## V.    ARGUMENT

### A.    DataSphere Fails to Plausibly Allege Facts Sufficient to Establish Divided Infringement

Where no single entity performs every step of a claimed method or practices every element of a claimed system, infringement may only be found under a theory of divided infringement if the acts of one entity are attributable to another. *IBM v. Booking Holdings, Inc.*, 775 F. App'x 674, 678 (Fed. Cir. 2019). As the Federal Circuit has explained, divided infringement arises where "more than one actor is involved in practicing the steps" of an asserted claim, and "the acts of one are attributable to the other." *Id.*

An entity may be held liable for divided infringement in only two narrow circumstances: (1) where the entity "directs or controls others' performance," or (2) where the relevant actors

"form a joint enterprise." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). To satisfy the direction-or-control prong, courts look to general principles of vicarious liability, examining whether the accused infringer "act[ed] through an agent, contract[ed] with another to perform one or more steps of a claimed method," or "condition[ed] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[ed] the manner or timing of that performance." *Id.* at 1023. To establish a joint enterprise, the plaintiff must satisfy a stringent, four-pronged test requiring: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.*

Courts have recognized that these multi-party relationships exist along a "spectrum": "At one end is 'mere arms-length cooperation,' which is insufficient to establish infringement. At the other end is 'control or direction over the entire process such that every step is attributable to the controlling part, i.e., the mastermind,' which is enough to establish infringement. The outcome of applying the direction or control standard depends on where on this spectrum a particular case falls." *Alexsam, Inc. v. Barnes & Noble, Inc.*, No. 2:13-CV-3-MHS-CMC, 2014 WL 12615846, at *3 (E.D. Tex. May 12, 2014) (Schneider, J.) (citations omitted).

Courts in this District have granted motions to dismiss where a complaint alleges method claims requiring multiple actors but fails to plead facts showing that the defendant directed or controlled the performance of all claimed steps or participated in a joint enterprise. *See, e.g.*, *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2024 WL 4870768, at *5 (E.D. Tex. Nov. 21, 2024) (Gilstrap, J.) (granting motion to dismiss because plaintiff "fail[ed] to state a claim for divided infringement under the *Akamai* 'conditioned benefit' test for direction and control"); *Lone Star Tech. Innovations, LLC v. ASUSTeK Comput. Inc.*, No. 6:19-CV-00059-RWS,

6

2020 WL 6803249, at *7 (E.D. Tex. Jan. 14, 2020) (Schroeder, J.) (granting motion to dismiss when "allegations are insufficient to plausibly claim that [defendant] directs or controls third party infringement. Apart from allegations 'on information and belief,' [plaintiff] does not provide any factual support: no example contracts, no example agreements and no terms suggesting control. Pleading facts 'on information and belief,' alone, is not enough.").

DataSphere's Complaint falls well short of this pleading standard. As to the '778, '172, and '239 patents, DataSphere asserts method claims, attributing third-party functionality to Equinix. As such, DataSphere can only proceed on a divided-infringement theory because DataSphere does not and cannot allege that Equinix alone performs every step of the claimed methods. But DataSphere's infringement claim fails because it does not allege that Equinix directed or controlled those third parties (or their accused functionality) or formed a joint enterprise with them. Likewise, as to the '381 patent, DataSphere asserts an apparatus claim and similarly attributes third-party product functionality to Equinix.  But again, DataSphere does not and cannot allege that Equinix alone practices every element of the claimed system. DataSphere's infringement claim again fails because it does not allege any facts establishing that Equinix controls the claimed system as a whole or puts it into service by using all portions of it.

1.    <u>DataSphere fails to allege that any single entity performs, or directs or controls the performance of, all asserted claim steps required for divided infringement under the '778 patent.</u>

DataSphere's infringement allegations for the '778 patent fail to state a claim for divided infringement. The '778 patent claims a method for controlling the flow of data over an optical transport system, including determining whether memory in an egress terminal is available and allowing data transmission only when it is. Dkt. No. 1 ¶ 49. The '778 infringement chart identifies Equinix IBX Centers and Hitachi Cloud Connect for Equinix as accused instrumentalities but accuses neither of performing the claimed flow control steps. Indeed, the Equinix IBX centers

7

serve only as physical facilities and the Hitachi Cloud Connect solution provides only the storage system deployed within those facilities. Dkt. No. 1-6 at 2–12. For the claimed flow control steps, the '778 infringement chart points to a third-party product, Broadcom's Brocade 6510 Fibre Channel switch, as the mechanism by which the claimed method is allegedly practiced.  Every step of method claim 25 is mapped to Brocade 6510's flow control functionality, and supported by citations to Broadcom documentation. *Id.* at 2–13. Noticeably absent are citations to any Equinix documents. *See generally id.*

The Complaint attributes flow control functionality, including determining memory availability in an egress terminal (claim element 25[A]), allowing transmission of the data only when memory is available (claim element 25[B]), receiving data from the first network (claim element 25[C]), and transmitting data over the optical transport system from the ingress terminal to the egress terminal (claim element 25[D]), to hardware in Broadcom's Brocade switch rather than to any Equinix product or service. *Id.* at 13–31; Dkt. No. 1 ¶ 49. The '778 infringement chart also alleges that the claimed flow control functionality is implemented at the hardware level: i.e., buffer credits are "physical memory resources that are incorporated in the Application-Specific Integrated Circuit (ASIC) that manages the port." Dkt. No. 1-6 at 24 (citing https://docs.broadcom.com/doc/12380259). DataSphere thus concedes that the alleged functionality is implemented by Broadcom, and not Equinix. Indeed, the Complaint does not allege that Equinix designed, developed, or controls Broadcom's Brocade 6510's flow control features, nor does it plead any agency relationship, contractual obligation, or joint enterprise between Equinix and Broadcom with respect to the performance of the claimed method steps. Dkt. No. 1 ¶¶ 47–53.

Like in *Mullen Industries*, where the Court held that the complaint failed to allege (1) that the defendants had "the requisite 'direction or control' over the other actors' performance" or (2)

"the existence of a joint enterprise," DataSphere's Complaint is similarly bereft of any such allegations, let alone supporting facts. *Mullen Indus*., 2024 WL 4870768, at \*5; *compare, with Akamai Tech*., 797 F.3d at 1024 (observing facts sufficient to reinstate the jury's verdict of direct infringement, which were not alleged in DataSphere's Complaint: "[the defendant] conditions its customers' use of its content delivery network upon its customers' performance of the tagging and serving steps, and that [the defendant] establishes the manner or timing of its customers' performance"). Because DataSphere's Complaint fails to plead any direction or control by Equinix over the accused third-party functionality, DataSphere's claim for the '778 patent should be dismissed.

    2.    <u>DataSphere fails to allege that any single entity performs, or directs or controls the performance of, all asserted claim steps required for divided infringement under the '172 patent.</u>

The deficiencies in DataSphere's divided-infringement allegations for the '172 patent are equally apparent. The '172 patent claims a method for routing calls in a hybrid packet-based and circuit-switched network using softswitches. Dkt. No. 1 ¶ 56. DataSphere's infringement chart for the '172 patent identifies Equinix Data Centers and a component of services marketed as "Platform Equinix" (Network Edge) but accuses neither of performing the claimed call-processing steps. Instead, it relies entirely on the functionality implemented by third-party VoIP service providers like Twilio Interconnect and Telnyx Telephony Engine for the claimed call-processing steps. *See generally* Dkt. No. 1-7. Specifically, the '172 infringement chart references Telnyx Telephony Engine in the preamble discussion and generically alleges, "on information and belief," that the accused instrumentalities include a "softswitch or proxy server," but never explicitly identifies any product as the "call processor forming part of one of a plurality of softswitches" that the claim requires. *Id.* at 1–2, 13, 17, 25. And for each of the three claimed method steps, the '172 infringement chart states that "the VoIP service provider utilizes the '172 patent Accused

Instrumentalities." *Id.* at 13, 17, 25. DataSphere thus concedes that the claimed routing steps (determining the destination location (claim 1[A]), identifying the nearest softswitch (claim 1[B]), and routing the call to the identified softswitch (claim 1[C])) are performed by independent third-party VoIP providers, not Equinix.

As with the '778 patent, noticeably absent from the '172 infringement chart are any allegations that Equinix itself performs any of the claimed call-processing steps, or that Equinix directs or controls how third parties like Twilio or Telnyx route calls, process VoIP traffic, or operate softswitches. This comes as no surprise. Twilio and Telnyx are independent third-party companies that develop and operate VoIP and telecommunications services, while Equinix simply provides the data center environment in which third parties can choose to deploy their services.

In an attempt to implicate Equinix, DataSphere vaguely alleges that "on information and belief" that the Accused Instrumentalities "include" a softswitch or proxy server for all three elements. *See* Dkt. No. 1-7 at 13, 17, 25. First, simply pleading that the Accused Instrumentalities "include" these components "on information and belief"—without more—is insufficient. *See generally id.*; *see also Lone Star*, 2020 WL 6803249, at *7 (granting motion to dismiss on divided infringement when "[p]leading facts 'on information and belief,' alone, is not enough"). Second, this allegation is flatly contradicted by DataSphere's own citations in its infringement chart, in which DataSphere points exclusively to third parties (Telnyx and Twilio) for call-processing functionality, including any softswitches or proxy servers. *See* Dkt. No. 1-7 at 13–17 (citing https://blog.equinix.com/blog/2016/09/01/how-telnyx-is-delivering-voice-over-multi-cloud/; https://telnyx.com/resources/sip-trunking-explained; https://telnyx.com/products/ programmable-networking).

Regardless, neither the Complaint nor the '172 claim chart alleges that Equinix directs or controls these third parties, or any alleged softswitches, proxy servers, or DNS servers they

10

operate. Without such allegations, DataSphere's divided-infringement allegations fail. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (holding that a plaintiff pursuing a divided-infringement theory must plead specific facts to show "direction or control" or "joint enterprise").

DataSphere's best attempt at suggesting a relationship between Equinix and the third parties is a citation to one document that characterizes Telnyx as an "Equinix partner" and indicates that Telnyx built its Telephony Engine network backbone in Equinix data centers. Dkt. No. 1-7 at 8–11 (citing https://blog.equinix.com/blog/2016/09/01/how-telnyx-is-delivering-voice-over-multi-cloud/ and https://telnyx.com/resources/global-network-partnerships). But that same blog article confirms that Telnyx independently "built out its global IP network backbone for its cloud-based on-demand voice/messaging platform, Telephony Engine (TE), by looking for globally strategic points of presence (POP) and network peering and carrier- and cloud-neutral data centers." (citing https://blog.equinix.com/blog/2016/09/01/how-telnyx-is-delivering-voice-over-multi-cloud/). The article further states that "Telnyx built its TE network backbone in Equinix's Chicago, Silicon Valley and Washington D.C. data centers" (citing https://blog.equinix.com/blog/2016/09/01/how-telnyx-is-delivering-voice-over-multi-cloud/). In other words, Equinix provides the physical data center space in which Telnyx independently designed, built, and operates its Telephony Engine, selected its points of presence, engineered its network architecture, and serves its enterprise customers.

This is precisely the kind of "mere arms-length cooperation" that courts have found "insufficient to establish infringement." *Alexsam, Inc*., 2014 WL 12615846, at *3. As the *Alexsam* court recognized, "direct infringement is not extended to cases in which multiple independent parties perform the steps of the method claim," and "absent an agency relationship between the actors or some equivalent, there is no direct infringement," even where parties have arranged to divide their conduct. *Id.* at *2. Providing data center space in which an independent third party

11

designs, builds, and operates its own product is not direction or control of the products created in that space, and DataSphere does not plead otherwise. Because DataSphere's Complaint offers no plausible theory under which Equinix directs or controls the performance of all claimed method steps, its infringement claim for the '172 patent should be dismissed.

        3.      <u>DataSphere fails to allege that any single entity performs, or directs or controls the performance of, all asserted claim steps required for divided infringement under the '239 patent.</u>

Similar deficiencies plague DataSphere's divided-infringement allegations for the '239 patent. To begin, the '239 infringement chart accuses Equinix's Data Centers and Equinix's Network Edge platform, but for the claimed method steps relating to packet routing, it relies solely on third-party components deployed on the Network Edge platform: "VNFs" (virtual network functions); "source VTEPs" ("source" Virtual Extensible Local Area Network ("VXLAN") Tunnel Endpoints); and "target VTEPs" ("target" Virtual Extensible Local Area Network ("VXLAN") Tunnel Endpoints). *See, e.g.*, Dkt. No. 1-8 at 8–23 (citing https://docs.equinix.com/network-edge/support-terms/ne-platform-architecture/). VTEPs are themselves third-party components of third-party VNFs. In other words, VNFs, source VTEPs, and target VTEPs are all third-party products deployed and controlled by customers—likely an assortment of customers—but critically, not Equinix. Indeed, DataSphere's own evidence confirms that customers independently "deploy and run virtual network services and appliances" (*i.e.*, VNFs) on Equinix's platform, without oversight from Equinix. Ex. A (printout of https://docs.equinix.com/network-edge/).[2] Moreover, the claim chart does not identify any specific vendor for these third-party components, any specific

---

[2] DataSphere cites to (https://docs.equinix.com/network-edge/support-terms/ne-platform-architecture/) in its claim chart and because (https://docs.equinix.com/network-edge/support-terms/ne-platform-architecture/) is a subpage of (https://docs.equinix.com/network-edge/), the parent page can be considered based on the doctrine of incorporation by reference. *See, e.g.*, *One Beacon Ins. Co. v. Crowley Marine Servs., Inc*., 648 F.3d 258, 263, 269–70 (5th Cir. 2011) (terms located on a subpage of Crowley's website were incorporated by reference even though the subpage "could not be accessed by typing 'www.crowley.com / documents & forms' into a web browser" based on standard of reasonableness).

product or configuration, or any specific instance that corresponds to the "source" and "target" devices. Because DataSphere does not and cannot allege that Equinix directs or controls any third party's performance of the claim elements, DataSphere cannot establish vicarious liability for divided infringement under *Akamai*.

Stepping through DataSphere's allegations for each claim element only confirms that DataSphere's divided-infringement theory fails. DataSphere's chart attributes each step of claim 1 to third-party components deployed and operated by customers, not Equinix. Element 1[A], which requires receiving a data packet at a source edge device, is mapped to a "source VTEP," a third-party VNF. Element 1[B], determining the next-hop address in the source edge device, is likewise attributed to routing decisions made by "VNFs" and "source VTEPs." Element 1[C], determining the address and network interface of the target edge device, is mapped to EVPN route lookups performed by "VTEPs." Element 1[D], generating a transmission packet in the source edge device, is mapped to VXLAN-encapsulated packets generated by third-party VNFs, not Network Edge or any other Equinix product. Finally, element 1[E], transmitting the packet to the target edge device, is mapped to "VTEPs." Indeed, the '239 claim chart maps the "transmission packet" to a "VXLAN encapsulated packet" generated by third-party VNFs. Dkt. No. 1-8 at 20–24. As with the '778 and '172 patents, DataSphere does not and cannot allege any direction or control by Equinix over these third-party functions. Equinix simply provides the underlying infrastructure on which third parties can select, deploy, and operate their VNFs that DataSphere accuses of performing the claimed method steps. *See* Ex. A.

For similar reasons, DataSphere also fails to satisfy *Akamai*'s "conditioned benefit" test. DataSphere's Complaint does not allege that Equinix conditions access to Network Edge upon customers performing the specific "next-hop address determination" or "transmission packet generation" steps recited in the claim. Nor does DataSphere allege that Equinix dictates the manner

13

or timing of routing-table logic, encapsulation fields, or any other VNF operation that Equinix alleges performs the claim limitations. *See Mullen Indus.*, 2024 WL 4870768, at \*5 (granting motion to dismiss because plaintiff "fail[ed] to state a claim for divided infringement under the *Akamai* 'conditioned benefit' test for direction and control"). As discussed above, Equinix's relationship with the third parties (customers) that develop and operate VNFs is, at most, "mere arms-length cooperation." *See Alexsam, Inc.*, 2014 WL 12615846, at \*3.

Nor can DataSphere rely on a joint-enterprise theory. DataSphere's Complaint fails to allege any of the four required elements: (1) an agreement, express or implied, between Equinix and its customers or VNF providers regarding the performance of the claimed method steps; (2) a common purpose to carry out those steps; (3) a community of pecuniary interest in that purpose; or (4) an equal right of control over the enterprise. *See Akamai Techs.*, 797 F.3d at 1023. DataSphere pleads none of these elements for the '239 patent, and therefore offers no reason its divided-infringement theory should survive the pleading stage.

4.    <u>DataSphere fails to allege that Equinix controls the claimed system as a whole or puts into service all portions of the claimed invention for divided infringement under the '381 patent.</u>

DataSphere also fails to plead facts establishing that Equinix controls the claimed apparatus of the '381 patent as a whole. "[T]o 'use' a system for purposes of infringement, a party must put the invention into service." *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (citation omitted). "In order to put the system into service, the end user must be using all portions of the claimed invention" and "control the system as a whole and obtain benefit from it." *Info. Images, LLC v. PGA Tour, Inc.*, 686 F. Supp. 3d 549, 557 (W.D. Tex. 2023) (quoting *Centillion*, 631 F.3d at 1284).

For claim element 25[A], which requires "a storage interface configured to communicate with a storage system having a non-volatile storage component," the '381 infringement chart

14

generally identifies Equinix Network Edge, Equinix IBX centers, Hitachi VSP storage systems (the VSP E790 and VSP 5200), and Broadcom's Brocade 6510 Fibre Channel. *See* Dkt. No. 1-5 at 2, 5. However, the infringement chart maps only the claimed storage interface to Hitachi and Broadcom hardware, not Equinix Network Edge or IBX centers. And yet again, the Complaint fails to plead that Equinix directs or controls Hitachi's or Broadcom's deployment or operation of the accused storage systems, or the system as a whole.

At best, DataSphere cites to a document in which Hitachi describes its VSP storage system as a "near-cloud hybrid solution" created through a "collaboration with Equinix"; that is, Equinix provides the space, and Hitachi provides the hardware. *Id.* at 5. But even if this allegation is taken as true, the purported "collaboration" is nothing more than a colocation arrangement: Hitachi's customers "locate Hitachi VSP enterprise-class storage at Equinix International Business Exchange (IBX) data centers worldwide" while "still maintaining control" over their own storage systems. *Id.* (*see, e.g.*, https://www.hitachivantara.com/en-us/pdf/architecture-guide/near-cloud-disaster-recovery-solution-with-hur.pdf). Merely because Hitachi chose to place its hardware in an Equinix data center does not mean Equinix directs or controls Hitachi's storage systems, as required to state a claim for divided infringement. To the contrary, a "collaboration" of this nature, where one party merely provides data center space and the other independently designs, deploys, and operates its own hardware, is precisely the type of "mere arms-length cooperation" that is "insufficient to establish infringement." *Alexsam, Inc.*, 2014 WL 12615846, at *3.

For Claim Element 25[B], which requires "a host interface configured to communicate with a plurality of clients," the '381 infringement chart relies on the Broadcom's Brocade 6510 switch, citing Broadcom's technical documents to describe the switch's functionality.  Dkt. No. 1-5 at 13, 15. But again, DataSphere fails to allege any facts sufficient to show that Equinix directs or controls the operation of this third-party switch, or the system as a whole.

15

For claim elements 25[C] (cache configured to associate a buffer with each client) and 25[D] (circuitry configured to identify a data rate based on buffer occupancy and decoupled from asynchronous storage transfers), the '381 infringement chart maps both limitations to the buffer-credit-based flow control mechanism built into the same Broadcom Brocade 6510 switch, alleging that the switch "controls frame transmission rate based on buffer availability" and that the transmission rate to each client "is independent of the data rate between the switch and the storage device." *See* Dkt. No. 1-5 at 18, 31–32. But these are inherent features of Broadcom's Fibre Channel architecture, and not anything Equinix designed or manufactured, or that it operates or controls. And DataSphere does not allege as much.

Like in *Centillion*, 631 F.3d at 1284, where the defendant did not "use" the system because it never put the customer's computer into service, Equinix does not "use" the accused apparatus because it does not put into service the third-party components that its customers independently deploy and control. *See Information Images,* 686 F. Supp. 3d at 568 (holding that "[i]t is the patron's input that causes the processing module, a back-end component, to act out an intended purpose: distributing 'requested data to each second portable device over the wireless network based on received data requests from each second portable device," and that "PGA TOUR patrons, therefore, control this portion of the accused system—not the PGA TOUR"); *see also ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-CV-00044-ADA, 2021 WL 1069047, at *5 (W.D. Tex. Mar. 18, 2021) (holding that "Roku does not make, sell, or offer to sell the entire system recited in claim 11; it only makes, sells, or offers to sell a part of the system" and that "merely providing instructions to users regarding how they may use an alleged infringer's product does not suffice as direction and control" to show vicarious liability). Because DataSphere's Complaint fails to plead the requisite "control" of the claimed system, DataSphere's infringement claim as to the '381 patent should be dismissed.

16

**B.      DataSphere Fails to Plead Facts Sufficient to Establish Direct Infringement**

To state a viable claim for direct infringement under 35 U.S.C. § 271(a), a plaintiff must give the defendant "fair notice" of the infringement claim and "the grounds upon which it rests," which requires plausibly alleging that the accused products meet "each and every element of at least one claim" of the asserted patent. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). For apparatus or system claims, direct infringement "requires that each and every limitation set forth in a claim appear in an accused product." *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) (citation omitted); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-CV-00197-JRG, 2019 WL 1979930, at *2 (E.D. Tex. May 3, 2019) ("A claim of literal infringement requires a showing that 'each and every limitation set forth in a claim appear[s] in the accused product.'" (quoting *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990)).

A plaintiff cannot satisfy this standard "by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). When a complaint fails to allege that the defendant satisfies each element of the claim, the direct infringement claims are implausible and should be dismissed. For the reasons explained below, that is the case here.

1.      DataSphere fails to allege that the Accused Instrumentalities satisfy each and every element of the Asserted Claims.

DataSphere's infringement allegations are additionally deficient because the claim charts accompanying the Complaint fail to plausibly allege that any accused product satisfies each element of the asserted claims. The standard for what must be pleaded to sufficiently allege infringement is context-specific. Although simple technologies may require less detail, *see Disc*

17

*Disease*, 888 F.3d at 1260, the Asserted Patents involve complex, software-and-network-based technologies, and a higher level of specificity is required. In *Chapterhouse, LLC v. Shopify, Inc.*, the Court dismissed direct-infringement claims involving hardware and software for an electronic transaction receipt system, holding that a "conclusory statement" of fact in the claim chart "on its own" is insufficient and that "to pass the *Iqbal/Twombly* standard, there must be accompanying factual allegations. No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). Here, the Asserted Patents are directed to multi-layered, wholly intangible network and telecommunications systems involving data buffering, optical transport flow control, VoIP call routing through softswitches, and distributed dynamic packet routing, which are at least as abstract and complex as the system claims at issue in *Chapterhouse*. They are not the kind of "simple technology" that permits bare-bones pleading under *Disc Disease*. DataSphere's infringement allegations fail under any standard, but especially under a higher standard required for the software and networking patents at issue here.

The '381 patent claim chart is deficient for failing to cite evidence for several limitations. First, with respect to element 25[A], the chart relies on a generic third-party website, crystalrugged.com, to allege the claimed "non-volatile storage," without any alleged connection to an Equinix product or system. Dkt. No. 1-5 at 12, 15. The chart therefore provides no factual basis for concluding that any accused Equinix system satisfies this limitation. Second, while element 25[C] requires "a cache configured to associate a buffer with each client," the Complaint does not allege that any Equinix-owned or third-party product includes a cache that associates per-client buffers. Instead, the chart relies on generic descriptions of Fibre Channel switching functionality and vague references to an unspecified "platform." *Id.* at 18–30. These conclusory assertions do not plausibly allege that any component of the accused system is configured to associate a buffer with each individual client, as the claim expressly requires. Finally, element

18

25[D] requires that "the identified data rate is based on an amount of data existing in the buffer for the receiving client and decoupled from asynchronous transfers over the storage interface." The Complaint contains no allegation that any accused product or component determines an output data rate based on the occupancy of a client-specific buffer, or that any such determination is decoupled from asynchronous storage-interface transfers. *See generally Id*. The chart's generic references to buffering and flow control are insufficient because they do not address the specific claim limitation at issue.

For the '778 patent, claim element 25[A] requires "determining whether a memory in an egress terminal is available to store the data received by the egress terminal based at least in part on a data amount." Dkt. No. 1-6 at 13. The infringement chart does not allege facts showing that any system performs a memory-availability determination that is calculated based on a data amount transmitted to the egress terminal. *Id.* at 13–24. This is not merely a question of attribution to the wrong actor; the Complaint fails to identify any product or component that performs this function at all. Without any articulable facts allegedly satisfying this claim element, DataSphere has not plausibly pleaded that the accused instrumentality practices the '778 patent.

For the '172 patent, claim 1 requires "[a] call processor forming part of one of a plurality of softswitches." Dkt. No. 1-7 at 2. The infringement chart references Telnyx's Telephony Engine in the preamble and generically alleges, "on information and belief," that the accused instrumentalities include "a softswitch or proxy server" for the individual claim elements. *See Id.* at 2, 13, 17, 25. But the chart never identifies any specific product that actually is a call processor forming part of a plurality of softswitches. Telnyx's Telephony Engine is a cloud-based VoIP platform. The chart does not allege that it contains a "call processor" or that it forms part of "a plurality of softswitches" that could satisfy this limitation. *See generally Id*. The Complaint likewise fails to allege that Equinix performs any call-control functions, which are fundamental to

the claimed invention. The deficiency extends to the three routing steps recited in elements 1[A], 1[B], and 1[C], which require [A] determining the destination location, [B] identifying the nearest softswitch, and [C] routing the call. The infringement chart provides no factual allegations describing how any Equinix system performs any of these three steps. *See* Dkt. No. 1-7 at 13–16 (element 1[A]), 17–20 (element 1[B]), 25–33 (element 1[C]). Instead, the chart cites third-party components, generic network architecture diagrams, and references to segment routing in general, none of which describe the specific call-routing operations the claim requires. Even aggregating every component and third-party product referenced in the Complaint, there is no allegation that any of them determines the destination location, identifies the nearest softswitch, or routes the call as the '172 patent claims require.

For the '239 patent, element 1[B] requires "determining in the source edge device the next-hop address corresponding to the destination address prefix of the received data packet." Dkt. No. 1-8 at 14. The claim chart does not allege that any edge device—an Equinix device or otherwise—performs a next-hop address determination based on a destination address prefix. *Id.* at 14–17. Instead, the chart relies on general descriptions of Layer 2 interconnection, which do not address the specific next-hop determination the claim requires. Layer 2 interconnection and next-hop address resolution based on destination address prefixes are fundamentally different network operations, and DataSphere's chart conflates the two without factual support.

Element 1[D] requires "[g]enerating in the source edge device a transmission packet addressed to the target edge device[,] the transmission packet comprising the received data packet and the determined next-hop address and the determined network interface of the target edge device." *Id.* at 20. The Complaint contains no allegation that any device—an Equinix device or otherwise—generates a transmission packet containing the specific contents the claim recites: the received data packet, the determined next-hop address, and the determined network interface of

20

the target edge device. *Id.* at 20–24. The chart's references to VXLAN encapsulation do not satisfy this limitation because they do not allege that the encapsulated packet includes all three required components. This element is entirely uncharted as to the specific packet contents the claim requires.

Courts in this District have granted motions to dismiss where, as here, a plaintiff's claim charts fail to connect the accused products to each claim limitation. In *CyboEnergy, Inc. v. Hoymiles Power Elecs. USA, Inc.*, the court agreed that the plaintiff failed "to plausibly allege that the accused products meet each and every element of [a] claim" and dismissed the infringement count. No. 2:23-CV-00311-JRG, 2024 WL 1219725, at *4 (E.D. Tex. Mar. 20, 2024) (Gilstrap, J.). Similarly, in *Stragent, LLC v. BMW of North America, LLC*, the court dismissed a patent infringement claim that failed to plausibly allege infringement of each patent claim element. No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *5–6 (E.D. Tex. Mar. 3, 2017) (Mitchell, M.J.). DataSphere's claim charts suffer from the same deficiencies and should be dismissed for the same reasons.

2. DataSphere impermissibly mixes and matches disparate products and third-party components across claim elements.

DataSphere's Complaint should also be dismissed because it does not plausibly allege infringement by any single accused instrumentality. Rather than identifying one Equinix product or system that practices every limitation of an asserted claim, the Complaint impermissibly mixes and matches disparate Equinix offerings and third-party components in an attempt to cobble together an infringement theory.

It is well established that "[i]nfringement cannot be shown by a muddled hash of elements from different products, since in order to infringe, 'the accused device must contain each limitation of the claim, either literally or by an equivalent.'" *Cap Co. v. McAfee, Inc.*, No. 14-CV-05068-JD,

21

2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015) (quoting *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1351 (Fed. Cir. 2013)). A plaintiff must, "at a minimum, 'chart a single product against all elements.' A plaintiff does not satisfy this requirement by 'mixing and matching between different accused products' in its claim charts." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (quoting *CAP*, 2015 WL 4734951, at *2) (citations omitted); *see also ZitoVault, LLC v. Int'l Bus. Machs. Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971179, at *3 (N.D. Tex. Mar. 29, 2018) (stating it would be improper to "only chart [one product's] functionality for some limitations and [another product's] functionality for other limitations").

The prohibition on mix-and-match pleading derives from the Federal Circuit's bedrock principle that direct infringement under § 271(a) requires that a single accused instrumentality practice each and every element of a claim. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) ("[D]irect infringement by 'use' of a claimed system requires use of each and every element of the system." (citing *Centillion*, 631 F.3d at 1284). Indeed, "[o]ne may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *Id.* at 1368 (quoting *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000)).

DataSphere's infringement allegations as to the Asserted Patents are precisely the kind of impermissible mix-and-match allegations that courts have dismissed. DataSphere's claim charts identify the "Accused Instrumentalities" as "Equinix Data Centers, Equinix Network Edge, Platform Equinix, Equinix Fabric, Equinix network infrastructure and services, and any other variations with similar features or functionalities." This is not a single product or an integrated system. Rather, it is a grab bag of distinct Equinix offerings, and DataSphere's erratic infringement allegations are only made worse by its reliance on third-party functionality for the core method

22

steps recited in the asserted claims, which DataSphere never alleges that Equinix owns, operates, or controls.

Beginning with the '172 patent, the preamble alone reveals the mix-and-match problem: the '172 infringement chart cites Equinix Data Centers, "Platform Equinix" (but meaning Network Edge), Twilio Interconnect, and Telnyx Telephony Engine as collectively performing VoIP call routing, but the accused functionality for the individual claim elements is scattered across different providers. Dkt. No. 1-7 at 1–12. For element 1[A], which requires determining the location of the call destination, the chart maps this limitation to Telnyx and Twilio for call destination and location functions. *Id.* at 13–16. For element 1[B], which requires identifying the nearest softswitch, the chart relies on Equinix segment routing for identifying routes by cost, yet there is "no explicit mapping of identifying the softswitch." *Id.* at 17–20.  And for element 1[C], which requires routing the call to the identified softswitch, the chart points to Equinix segment routing and "Platform Equinix" for routing cost. *Id.* at 21–33.  No single product or system is accused of satisfying all claim elements.

The '778 patent fares no better. The preamble cites three separate components: Equinix IBX Data Centers, Hitachi Cloud Connect for Equinix, and the Brocade 6510 Switch with flow control. Dkt. No. 1-6 at 1–12. For element 25[A], which requires determining whether memory in an egress terminal is available, the chart maps this element to (1) Equinix IBX Data Centers, which merely "house" the Brocade switch and Hitachi VSP, and (2) the Brocade 6510 Switch for the Brocade 6510 Switch's flow control, egress terminal, and memory (buffer) functionalities. *Id.* at 13–22. For element 25[B], which requires allowing transmission only when memory is available, the chart relies solely on the Brocade 6510 Switch for flow control. *Id.* at 23–30. For element 25[C], which requires receiving data from a first network, the chart points to Equinix Data Centers on the theory that they "are connected to optical networks." *Id.* at 31–35. And for element 25[D],

23

which requires transmitting data over the optical transport system, the chart attributes this to the Brocade 6510 Fibre Channel as the ingress terminal and the Fibre Channel system connecting data centers as the optical transport system. *Id.* at 36–43. Here again, different products are cited for each claim element.

DataSphere's infringement allegations for the '381 patent suffer from the same problem. For element 25[A], which requires a storage interface configured to communicate with a non-volatile storage system, the chart maps this to "Equinix data centers with Hitachi VSPs" as the storage systems and "the Brocade 6510 switch to communicate with memory." Dkt. No. 1-5 at 2–12. For element 25[B], which requires a host interface configured to communicate with clients, the chart splits this between Hitachi Cloud Connect as the interface for communication and the Brocade Switch for connectivity. *Id.* at 13–17. For element 25[C], which requires a cache configured to associate a buffer with each client, the Complaint relies on the fact that "Brocade switches have a buffer." *Id.* at 18–30. And for element 25[D], which requires circuitry configured to identify a data rate based on buffer occupancy, the chart attributes this to a combination of "the data centers, Hitachi VSPs and Brocade switches." *Id.* at 31–43. Every claim element is mapped to a different product or combination of products, and no single Equinix product is charted against all claim elements.

Finally, DataSphere's '239 infringement chart identifies a grab bag of components: Equinix Data Centers, Equinix Network Edge, Platform Equinix, and generic "VNFs" but never charts a single Equinix instrumentality against all claim elements. *See* Dkt. No. 1-8 at 1. For the preamble and element 1[A], the chart only relies on Network Edge infrastructure for receiving data packets. *Id*. at 2–13. But for elements 1[B], 1[C], and 1[D], the core routing and packet-generation steps, the chart points to third-party VNFs and VTEPs that customers independently deploy and control. *Id.* at 14–24. And for element 1[E], the chart alleges that Equinix's network infrastructure

24

somehow performs the transmission step. *Id*. at 21–26. Because DataSphere fails to allege that a single Equinix product or system meets all of the claim elements, DataSphere's allegations fail.

In sum, for all four Asserted Patents, DataSphere has failed to chart a single Equinix product or system against all elements of any asserted claim. DataSphere's mix-and-match infringement theories should be dismissed.

### 3. DataSphere's doctrine-of-equivalents allegations are conclusory and fail for the same reasons as its literal-infringement claims.

As a fallback allegation, DataSphere's Complaint alleges that Equinix infringes each Asserted Patent "literally or under the doctrine of equivalents." Dkt. No. 1 ¶¶ 41, 48, 55, 62. But this bare invocation adds nothing to DataSphere's direct infringement allegations and independently fails to state a claim.

To support a finding of infringement under the doctrine of equivalents, a patentee must demonstrate either an insubstantial difference between the claimed invention and the accused product, or satisfy the function-way-result test, on a limitation-by-limitation basis. *Aquatex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). DataSphere's Complaint does none of this. DataSphere's doctrine-of-equivalents allegations are identical in substance to the literal-infringement allegations. The Complaint does not identify which claim limitations are allegedly met by equivalent structure, function, or result in any accused product. It does not allege what differences exist between the claimed elements and the accused products, let alone explain why those differences are insubstantial.

The Complaint's assertion of infringement under the doctrine of equivalents is therefore nothing more than a conclusory, blanket assertion appended to its literal infringement theories and should also be dismissed for the same reasons described herein. *See* Sections V.A–V.B.1.

25

C.     DataSphere's Likely Request for Leave to Amend Should Be Denied as Futile

Should the Court be inclined to dismiss DataSphere's Complaint and DataSphere seeks leave to amend its deficiencies, the request should be denied as futile. "Leave to amend is in no way automatic." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). A plaintiff must "set forth with particularity the grounds for the amendment and the relief sought," and where a plaintiff fails to do so, a pro forma request for leave to amend should be denied. *Kovalchuk v. Wilmington Sav. Fund Soc'y*, No. 21-40281, 2021 WL 5119705, at *2 (5th Cir. Nov. 3, 2021) (quoting *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003)); *see also Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) (finding no abuse of discretion in denying leave to amend in response to a Rule 12(c) motion where plaintiff "failed to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies in his pleadings"); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (finding no abuse of discretion in denying leave to amend where plaintiffs "tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss").

Here, the deficiencies in DataSphere's Complaint are not the kind that an amendment can cure. DataSphere's own claim charts concede that the core functionalities claimed by the Asserted Patents are performed by independent third parties, not Equinix, and not under the direction and control of Equinix. For the '172 patent, DataSphere alleges that Twilio and Telnyx route calls and operate the softswitches, not Equinix. For the '381 patent, DataSphere alleges that the accused storage interface is mapped to Hitachi VSP systems that Hitachi deploys, and that the host interface, cache, and flow control circuitry are mapped to Broadcom's Brocade 6510 switch hardware, which Equinix does not make, operate, or control. For the '778 patent, DataSphere alleges that the flow-control steps are performed by Broadcom's Brocade 6510 switch, while

26

Hitachi Cloud Connect supplies the storage system, and Equinix is merely the owner of the data center colocation space in which these processes occur. Lastly, for the '239 patent, DataSphere alleges that the claimed packet routing is performed by third-party VNFs that customers independently deploy on Equinix Network Edge.

Leave to amend would therefore be futile, as no amendment can recharacterize third-party products or create an agency or direction and control relationship where none exists. *Supra* V.A. This is not a case where DataSphere simply failed to include enough details in its claim chart and can remedy the problem with additional factual allegations. The fundamental deficiency is that the Complaint does not and cannot identify a single accused instrumentality that meets each and every element of any asserted claim. Similarly, the gaps in the claim charts are not the kind of technical insufficiency that can be cured by accepting the Complaint's allegations as true; rather, they represent missing allegations entirely. *Supra* V.B.1.

To compound these fundamental deficiencies, the Complaint is also riddled with errors. For example, in each of its four counts, DataSphere alleges that "***Equinix*** has and continues to suffer damages as a direct and proximate result of ***Skullcandy's*** direct infringement" of the Asserted Patents. Dkt. No. 1 ¶¶ 45, 52, 59, 66 (emphases added). The Complaint then goes on to allege that "***Equinix*** is entitled to recover: (i) damages adequate to compensate DataSphere for Equinix's direct infringement of the [Asserted] Patent[s], which at a minimum, amounts to a reasonable royalty; (ii) attorney's fees; and (iii) costs." *Id.* ¶¶ 46, 53, 60, 67 (emphasis added). Of course, Skullcandy is not a party to this action. These pleadings errors appear to be recycled language from *Earin AB v. Skull Candy, Inc.*, No. 1:25-cv-00712-RGA-SRF (D. Del. June 6, 2025), in which counsel for DataSphere is also counsel of record for the plaintiffs against Skullcandy. Ex. B (Complaint for *Earin AB v. Skull Candy, Inc.*) ¶¶ 30–31 ("Earin AB has and continues to suffer damages as a direct and proximate result of Skullcandy's direct infringement of the '645 Patent;

Earin AB is entitled to recover: (i) damages adequate to compensate Earin AB for Skullcandy's direct infringement of the '645 Patent, which at a minimum, amounts to a reasonable royalty; (ii) attorney's fees; and (iii) costs."). Indeed, the two complaints are strikingly similar in both structure and language. Counsel did not take even the most basic steps to tailor the pleading to the facts or parties in this case, or to correct obvious errors carried over from prior litigation. The result is a Complaint riddled with inaccuracies that reflect a lack of diligence and fall well short of acceptable pleading standards. DataSphere thus gives the Court no reason to afford it a second attempt at pleading infringement. *See, e.g.*, *Orion IP, LLC v. Home Depot USA, Inc.*, No. 2:05-CV-306, 2005 WL 8161153, at *1 (E.D. Tex. Oct. 7, 2005) ("[I]n patent cases before this Court, the 'Patent Rules demonstrate high expectations as to plaintiff's preparedness before bringing suit[.]'").

## VI.    CONCLUSION

For the foregoing reasons, Equinix respectfully requests that the Court dismiss DataSphere's Complaint with prejudice without leave to amend.

Dated:   April 13, 2026

Respectfully submitted,

By:   */s/ Samantha M. Lerner*

Samantha M. Lerner (*pro hac vice*)
Illinois Bar No. 6293319
slerner@winston.com
Saranya Raghavan (*pro hac vice*)
Illinois Bar No. 6321346
sraghavan@winston.com
**WINSTON & STRAWN LLP**
300 N. LaSalle Dr., Ste. 4400
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

Patrick Clark
State Bar No. 24115706
pclark@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., Ste. 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile:  (214) 453-6400

*Attorneys for Defendant Equinix, Inc.*

29

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served by email on all counsel of record via email on April 13, 2026.

*/s/ Samantha M. Lerner*
Samantha M. Lerner

30